1  Michael Partos, State Bar No. 143845
   COZEN O'CONNOR
2  601 S. Figueroa Street
   Suite 3700
3  Los Angeles, CA  90017
   Telephone: 213.892.7900
4  Toll Free Phone: 800.563.1027
   Facsimile: 213.892.7999
5
   Attorney for UPSLABS, LLC, USPLABS
6  JACK3D, LLC, USPLABS OXYELITE,
   LLC, JONATHAN VINCENT DOYLE
7  AND JACOB GEISSLER

8

9                    UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11
   DOMINIC LITTLE, DAVID BLAKE          Case No.: _____
12 ALLEN, JEFF ASHWORTH, NAOMI
   BOOK AND STANLEY BOOK AS            (Los Angeles Superior Court Case
13 CONSERVATORS OF THE ESTATE          No. BC534065)
   OF JUSTIN BOOK, MARTIN
14 SANCHEZ, JOHN BAINTER, RICH         DEFENDANTS' NOTICE OF
   WOLNIK, BRIAN NORRIS, JOSEPH        REMOVAL PURSUANT TO 28
15 CHILDS, JIMI HERNANDEZ, and         U.S.C. §§ 1331, 1332, 1441, 1453
   NOVALLIE HILL,                      AND 1446
16
17          Plaintiffs,                [MASS ACTION AND]
                                       [FEDERAL QUESTION]
18     vs.                             [Table of Contents Attached Pursuant
                                       to L.R. 11-8]
19 USPLABS, LLC, JONATHAN
   VINCENT DOYLE (an individual),
20 JACOB GEISSLER (an individual),
   USPLABS JACK3D, LLC, USPLABS
21 OXYELITE, LLC, GNC
   CORPORATION, THE VITAMIN
22 SHOPPE, VITAMIN SHOPPE
   INDUSTRIES, INC., BALLY TOTAL
23 FITNESS CORPORATION, NATURAL
   ALTERNATIVES INTERNATIONAL,
24 INC., S.K. LABORATORIES, INC., and
   DOES 1-500, Inclusive.,
25
            Defendants.
26
27
28
                                1

1    **TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO ALL**

2    **PARTIES:**

3        **PLEASE TAKE NOTICE** that Defendants USPlabs, LLC, Jonathan Doyle,

4    Jacob Geissler, USPlabs Jack3d, LLC, and USPlabs OxyElite, LLC ("Defendants"),

5    pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1453, and 1446, remove to this Court the

6    state action described below, which is within the original jurisdiction of this Court and

7    properly removed under those statutes. Pursuant to 28 U.S.C. § 1446(d), copies of this

8    Notice of Removal are being served upon counsel for Plaintiffs Dominic Little, David

9    Blake Allen, Jeff Ashworth, Naomi Book and Stanley Book, Martin Sanchez, John

10   Bainter, Rich Wolnik, Brian Norris, Joseph Childs, Jimi Hernandez, and Novallie Hill

11   ("Plaintiffs") and filed with the Clerk of the California Superior Court for the County

12   of Los Angeles, as an exhibit to a Notice of State Court Removal to Federal Court. A

13   copy of the Notice being filed in state court is attached hereto as Exhibit A. In support

14   of this action, the Defendants state as follows:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................4

I.      PROCEDURAL HISTORY AND TIMELINESS OF

        REMOVAL........................................................................................6

II.     REMOVAL IS PROPER BECAUSE THE COMPLAINT IS A MASS ACTION UNDER THE CLASS

        ACTION FAIRNESS ACT OF 2005...........................................................8

        A.  The amount in controversy exceeds $5 million.............................10

        B.  All plaintiffs' claims exceed $75,000......................................12

        C.  Minimal diversity exists among the parties...............................13

        D.  Plaintiffs seek joint trial on grounds that their claims involve common fact and

            law questions.................................................................14

        E.  Plaintiffs' fraudulent attempt to thwart CAFA does not deprive this court of

            jurisdiction...................................................................16

III.    A NECESSARY AND SUBSTANTIAL FEDERAL QUESTION IS EMBEDDED WITHIN

        PLAINTIFFS' STATE-LAW CLAIMS............................................................19

IV.     CONCLUSION....................................................................................23

DEFENDANTS' NOTICE OF REMOVAL

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Atwell v. Boston Scientific Corp.*

4

    2013 WL 6050762 (8th Cir. Nov. 18, 2013)........................................................15

5

6

*Bates v. Gen. Nutrition Centers, Inc.*

7

    897 F. Supp. 2d 1000 (C.D. Cal. 2012)........................................................14

8

*Freeman v. Blue Ridge Paper Products, Inc.*

9

    551 F.3d 405 (6th Cir. 2008)........................................................17, 18

10

*Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*

11

    545 U.S. 308 (2005)........................................................22

12

*Hamilton v. Burlington N. Santa Fe Ry. Co.*

13

    2008 WL 8148619 (W.D. Tex. Aug. 8, 2008)........................................................18

14

15

*Kearns v. Ford Motor Co.*

16

    2005 WL 3967998 (C.D.Cal. 2005)........................................................16

17

*Koral v. Boeing Co.*

18

    628 F.3d 945 (7th Cir. 2011)........................................................15

19

*Lewis v. Verizon Commc'ns, Inc.*

20

    627 F.3d 395 (9th Cir. 2010) ........................................................10

21

22

*Mireles v. Wells Fargo Bank, N.A.*

23

    845 F. Supp. 2d 1034 (C.D. Cal. 2012) ........................................................11, 12

24

*Rentz v. McKesson Corp.*

25

    2013 WL 645634 (C.D. Cal. Feb. 20, 2013)........................................................8

26

*Westwood Apex v. Contreras*

27

    644 F.3d 799 (9th Cir. 2011)........................................................8

28

DEFENDANTS' NOTICE OF REMOVAL

**STATUTES**

21 U.S.C. § 301, et seq. (FDCA and DSHEA)................................................20, 21, 22

28 U.S.C. § 1331.........................................................................................2, 24

28 U.S.C. § 1332..............................................................................2, 9, 11, 12, 24

28 U.S.C. § 1441.....................................................................................2, 28, 24

28 U.S.C. § 1453.......................................................................................2, 8, 24

28 U.S.C. § 1446.......................................................................................2, 8, 24

28 U.S.C. § 1711...........................................................................................16

**OTHER AUTHORITIES**

S. Rep. 109-14..............................................................................................17

S. Rep. 109-15..............................................................................................16

DEFENDANTS' NOTICE OF REMOVAL

## I.    **PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL**

1.    On May 8, 2013, Plaintiffs' counsel filed a mass Complaint For Damages And Demand For Jury Trial captioned *Justin Carolyne et a. v. USPlabs, LLC et al.*, Case No. BC508212, against the Defendants in the California Superior Court for the County of Los Angeles ("First State Court Action"). A true and correct copy of the Complaint is attached hereto as Exhibit B.  The Defendants timely removed the First State Court Action on January 28, 2014.

2.    On November 1, 2013, Plaintiffs' counsel filed another mass Complaint For Damages And Demand For Jury Trial captioned *Jeremy Reed et al. v USPlabs, LLC et al.*, Case No. 37-2013-00074052, against the Defendants in the California Superior Court for the County of San Diego ("Second State Court Action").  A true and correct copy of the Complaint is attached hereto as Exhibit C.  The Defendants timely removed the Second State Court Action on December 20, 2013.

3.    Also on November 1, 2013, Plaintiffs' counsel filed a "Notice of Related Case" in the Second State Court Action.  The notice asserts that the First State Court Action is related to the Second State Court Action; according to the form, it is related because it "involves the same parties and is based on the same or similar claims" and "arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact."  A true and correct copy of the "Notice of Related Case" is attached hereto as Exhibit D.

4.    On December 27, 2013, Plaintiffs' counsel sent a "Notice of Claims" to the Defendants by Federal Express, detailing the additional claims of 119 persons and listing an estimate of each claim's value.  The total of the 119 claims' estimated value is $862 million.  A true and correct copy of the "Notice of Claims" is attached hereto as Exhibit E.

5.    On January 23, 2014, Plaintiffs filed another mass Complaint For Damages And Demand For Jury Trial captioned *Dominic Little et al. v. USPlabs, LLC*

DEFENDANTS' NOTICE OF REMOVAL

1  *et al.*, Case No. BC534065, against the Defendants in the California Superior Court

2  for the County of Los Angeles ("Third State Court Action").  A true and copy of the

3  Complaint is attached hereto as Exhibit F.

4        6.    Also on January 23, 2014, Plaintiffs' counsel filed a "Notice of Related

5  Case" in the Third State Court Action.  The notice asserts that the Third State Court

6  Action is related to the First State Court Action; according to the form, it is related

7  because it "involves the same parties and is based on the same or similar claims" and

8  "arises from the same or substantially identical transactions, incidents, or events

9  requiring the determination of the same or substantially identical questions of law or

10  fact."  A true and correct copy of the "Notice of Related Case" is attached hereto as

11  Exhibit G.

12        7.    This Notice of Removal is filed within 30 days of the Defendants' receipt

13  of an "initial pleading setting forth the claim for relief upon which such action or

14  proceeding is based." 28 U.S.C. § 1446(b)(1).

15        8.    Consent to removal by all defendants is not required under the Class

16  Action Fairness Act of 2005. 28 U.S.C. § 1453(b); *see also Westwood Apex v.*

17  *Contreras*, 644 F.3d 799, 806 (9th Cir. 2011).

18        9.    True and correct copies of all pleadings, process, orders, and other filings

19  in the Third State Court Action are attached hereto as Exhibit F as required by 28

20  U.S.C. § 1446(a).

21        10.    Venue is proper in this district under 28 U.S.C. § 1441(a) because the

22  state court where the Third State Court Action has been proceeding is located in this

23  district.

24  II.    **REMOVAL IS PROPER BECAUSE THE COMPLAINT IS A MASS**

25         **ACTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005**

26        11.    Under the Class Action Fairness Act of 2005 ("CAFA"), removal of a

27  "mass action" is proper if the following elements are satisfied:  (1) the amount in

28  controversy exceeds $5 million; (2) there is minimal diversity, meaning at least one

1  plaintiff is diverse from at least one defendant; (3) at least one plaintiff's claim

2  exceeds $75,000; and (4) 100 or more plaintiffs have proposed to try their case jointly

3  on the ground that their claims involve common questions of law and fact. *See Rentz*

4  *v. McKesson Corp.*, 2013 WL 645634 (C.D. Cal. Feb. 20, 2013).

5      12.   A "mass action" under CAFA is any action in which "monetary relief

6  claims of 100 or more persons are proposed to be tried jointly on the ground that the

7  plaintiffs' claims involve common questions of law or fact." 28 U.S.C. §1332(d)(11).

8      13.   As more fully explained below, this action satisfies the criteria for

9  removal of a mass action under CAFA. Because Plaintiffs have engaged in a

10  deliberate, fraudulent attempt to evade this Court's jurisdiction under CAFA, the

11  Third State Court Action does not by itself meet the 100-plaintiff procedural

12  requirement for removal under CAFA. However, the "Notice of Claims" identifies

13  the claims of at least 119 Plaintiffs, nine (9) of whom are named in the Third State

14  Court Action. *Compare* Exhibits E and F. (The "Notice of Claims" names Dominic

15  Little, John Bainter, Rich Wolnik, Brian Norris, Jeff Ashworth and Novallie Hill. It

16  also identifies Plaintiff David Blake Allen as "Blake Allen," identifies Plaintiff Martin

17  Sanchez as "Martin Sanches," and names Justin Book, an allegedly disabled and

18  incompetent person represented in the Third State Court Action by his parents, Naomi

19  and Stanley Book).

20      14.   The First, Second, and Third State Court Actions establish a pattern by

21  Plaintiffs' counsel of splintering one mass action into separate lawsuits with fewer

22  plaintiffs; the three cases comprise 47 Plaintiffs divided, respectively, into groups of

23  17, 18, and 12. Plaintiffs acknowledge, through their "Notice(s) of Related Case,"

24  that the actions involve the same defendant parties, the same or similar claims, and

25  substantially identical questions of law or fact. The "Notice of Claims" confirms the

26  pattern and demonstrates that Plaintiffs' counsel intends to prosecute the claims of at

27  least another 110 Plaintiffs, either by joining them in one of the actions already filed,

28  or through the filing of another, separate action or actions.

15.    When the Third State Court Action is considered in light of the First and Second State Court Actions, the "Notice(s) of Related Case" and the "Notice of Claims," the Third State Court Action satisfies all criteria for removal under CAFA as a mass action: The amount in controversy exceeds $5 million, there is minimal diversity, more than 100 plaintiffs are proposed for their claims' joint trial, and several, if not all, of the Plaintiffs' claims exceed $75,000.  This Court should therefore exercise its jurisdiction consistent with the spirit and purpose of CAFA and removal jurisdiction.

## A.    THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

16.    The Third State Court Action does not contain any reference to monetary amounts and does not quantify the damages sought. *See* Complaint, Exhibit F. However, Plaintiffs' counsel's "Notice of Claims" lists the estimated value of 119 claims that total $862 million. *See* Exhibit E.  The amount in controversy is an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (quoting *McPhail v. Deere & Co.,* 529 F.3d 947, 956 (10th Cir.2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation.")). Under CAFA, the claims of individual plaintiffs in a mass action are aggregated to determine the amount in controversy. 28 U.S.C. § 1332(d)(6); *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1051 (C.D. Cal. 2012) (noting the aggregate amount in controversy for all plaintiffs must exceed $5 million to remove a mass action under CAFA).

17.    Moreover, the "Notice of Claims" places an estimated value on injuries suffered by Plaintiffs in the Third State Court Action.  For example, the "Notice of Claims" values the claim of Justin Book, who allegedly suffered a stroke as a result of ingesting a USPlabs' product, at $50 million, thereby satisfying CAFA's amount in controversy with a single claim. *See* Exhibit E.  Additionally, the "Notice of Claims"

DEFENDANTS' NOTICE OF REMOVAL

1  contains the following values for each alleged injury per Plaintiff: Dominic Little, $10

2  million; John Bainter, $1 million; Rich Wolnik, $10 million; Brian Norris, $10

3  million; Jeff Ashworth, $10 million; Novallie Hill, $10 million; David Blake Allen,

4  $10 million; Martin Sanchez, $5 million. *See id.* Thus, it is ascertainable from the

5  "Notice of Claims" that Plaintiffs in the Third State Court Action are seeking at least

6  $116 million.

7      18.    As the "Notice of Claims" makes clear, Plaintiffs are seeking at least $1

8  million for each and every Plaintiff.  The "Notice of Claims" includes a range of

9  values for each claim, from $1 million to $50 million per person. *See* Exhibit E.  The

10  alleged injuries listed in the "Notice of Claims" are entirely comparable to the injuries

11  allegedly suffered by Plaintiffs in the Third State Court Action not named in the

12  "Notice of Claims."  Thus, it is ascertainable that Plaintiffs are seeking at least at least

13  $1 million per named Plaintiff.  Additionally, the "Notice of Claims" lists a total value

14  of $862 million, according to Plaintiffs' counsel's own estimate, thus bringing the

15  amount in controversy to at least $879 million. *See Id.*

16      19.    Moreover, the Third State Court Action seeks punitive and treble

17  damages. *See* Complaint, Exhibit F, ¶¶ 313-322 and Prayer For Relief at ¶(g).

18      20.    Consequently, the amount in controversy here is unquestionably in

19  excess of $5 million. 28 U.S.C. § 1332(d)(6); *Mireles v. Wells Fargo Bank, N.A.*, 845

20  F. Supp. 2d 1034, 1051 (C.D. Cal. 2012) (noting the aggregate amount in controversy

21  for all plaintiffs must exceed $5 million to remove a mass action under CAFA).

22  **B.    ALL PLAINTIFFS' CLAIMS EXCEED $75,000**

23      21.    As previously noted, the Third State Court Action does not quantify

24  Plaintiffs' damages or specify any monetary amounts.  However, the "Notice of

25  Claims" lists monetary amounts for various injuries.  The value estimated for the

26  injuries of every Plaintiff listed in the "Notice of Claims" is at least $1 million,

27  including miscellaneous, unspecified injuries. *See* Exhibit E.  Consequently, Plaintiffs

28  have shown that they are seeking at least $1 million for every Plaintiff.  As the Third

1    State Court Action notes, Plaintiffs are seeking punitive damages and treble damages.

2    *See* Complaint, Exhibit F, ¶¶ 313-322 and Prayer For Relief at ¶(g).  Therefore, each

3    Plaintiff seeks damages in excess of $75,000.

4    **C.    MINIMAL DIVERSITY EXISTS AMONG THE PARTIES**

5    22.    Plaintiffs in the First State Court Action are citizens of 10 states,

6    including Ohio, New Hampshire, Washington, Alabama, California, South Carolina,

7    Florida, New York, New Jersey, and Michigan.  *See* Complaint, Exhibit B at ¶¶ 32-

8    113.

9    23.    Plaintiffs in the Second State Court Action are citizens of 14 states,

10    including California, New Jersey, Utah, Texas, Illinois, North Carolina,

11    Massachusetts, Pennsylvania, Virginia, Hawaii, Florida, Mississippi, Maryland, and

12    Nevada. *See* Complaint, Exhibit C at ¶¶ 26-111.

13    24.    Similarly, Plaintiffs in the Third State Court Action are citizens of eight

14    (8) states, including California, Missouri, Texas, Hawaii, Florida, Illinois, Ohio, and

15    Michigan.  *See* Complaint, Exhibit F at ¶¶ 28-83.

16    25.    None of the defendants in the First State Court Action is a citizen of

17    Ohio, New Hampshire, Alabama, South Carolina, Florida, Michigan, Utah, North

18    Carolina, Massachusetts, Virginia, Hawaii, Mississippi, Maryland, or Nevada.  *See*

19    Complaint, Exhibit B at ¶¶ 3-26.  The same is true of the defendants in the Second

20    State Court Action.  *See* Complaint, Exhibit C at ¶¶ 3-20.  The same is true of the

21    defendants in the Third State Court Action. See Complaint, Exhibit F, at ¶¶ 3-22.

22    26.    Because at least one plaintiff is diverse from at least one defendant,

23    minimal diversity exists among the parties. *Bates v. Gen. Nutrition Centers, Inc.*, 897

24    F. Supp. 2d 1000, 1003 (C.D. Cal. 2012) (noting CAFA's minimal diversity

25    requirement is met when at least one plaintiff is diverse from one defendant).

26

27

28

**D.    PLAINTIFFS SEEK JOINT TRIAL ON GROUNDS THAT THEIR CLAIMS INVOLVE COMMON FACT AND LAW QUESTIONS**

27.    The "Notice(s) of Related Case" filed by Plaintiffs' counsel also demonstrate the legal and factual commonality of the First, Second and Third State Court Actions. *See* Exhibits D and G. As indicated on the form submitted by Plaintiffs' counsel, they contend that the three cases are related because they involve "the same parties and [are] based on the same or similar claims," and they arise "from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact." *Id.*

28.    The "Notice of Claims" sent by Plaintiffs' counsel evidences their intent to try the claims of the additional 110 Plaintiffs jointly. *See* Exhibit E. The letter states Plaintiffs' counsel "represents the following claims for personal injury resulting from USPlabs LLC products." *Id.* Although the letter does not state that the 110 additional Plaintiffs' claims will be joined with those of the already filed actions, the similarity of the claims, including the alleged injuries and their alleged cause, along with their grouping together in the "Notice of Claims" and the Plaintiffs' representation by the same law firm, demonstrates an obvious intention to prosecute them together. As the Eighth Circuit has observed, a proposal to try claims jointly can be "implicit." *Atwell v. Boston Scientific Corp.*, 2013 WL 6050762 at *3 (8th Cir. Nov. 18, 2013). The *Atwell* plaintiffs filed three cases in Missouri state court, and the three groups filed similar motions proposing that the state court assign to each group "a single judge for the purposes of discovery and trial." *Id.* at *1. At a hearing, plaintiffs' counsel cited the need to avoid "inconsistent rulings," though he asserted, "We . . . don't want these cases consolidated." *Id.* at *4. The Sixth Circuit said counsel's statements revealed the motions' purpose was a joint assignment in which the inevitable result would be a joint trial. *Id.* at *5. Here, the "Notice of Claims" presents an implicit proposal to try an additional 110 Plaintiffs' claims jointly with those Plaintiffs named in the First, Second, and Third State Court Actions.

DEFENDANTS' NOTICE OF REMOVAL

29.     The First, Second and Third State Court Actions contain Plaintiffs' requests for jury trial "on all issues so triable." *See* Complaints at Jury Demand, Exhibits B, C and F.  This request implicitly assumes that the claims of all Plaintiffs in each action will be tried jointly.  *See Koral v. Boeing Co.,* 628 F.3d 945, 947 (7th Cir. 2011) (finding a single trial is intended when various plaintiffs' claims are joined in one complaint).

30.     Viewed together, the First State Court Action, the Second State Court Action, the Third State Court Action, the "Notice(s) of Related Case" and the "Notice of Claims" show that the claims of at least 100 Plaintiffs are proposed to be tried jointly, on the grounds that they involve questions of law and fact in common.

### E.     PLAINTIFFS' FRAUDULENT ATTEMPT TO THWART CAFA DOES NOT DEPRIVE THIS COURT OF JURISDICTION

31.     Splintering the claims of more than 100 plaintiffs into smaller, separate but nearly identical actions violates CAFA's purpose: To expand federal jurisdiction over class actions and mass actions.  *See Kearns v. Ford Motor Co.*  2005 WL 3967998, *7 (C.D.Cal. 2005).  As the Senate Committee Report on CAFA makes clear, CAFA's "provisions should be read broadly, with a strong preference that interstate class [and mass] actions should be heard in federal court is properly removed by any defendants."  S. Rep. No. 109-15, at 34; *see also* 28 U.S.C. § 1711 (CAFA is intended to "restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction.").  Here, the First State Court Action involves the claims of 17 Plaintiffs, the Second State Court Action involves the claims of 18 Plaintiffs, the Third State Court Action involves the claims of 12 Plaintiffs, and the "Notice of Claims" lists the claims of 110 additional Plaintiffs.  By splitting one mass action that involves 157 or more Plaintiffs into three or more separate actions, Plaintiffs are deliberately and fraudulently attempting to thwart CAFA by pleading around its 100-person requirement.

DEFENDANTS' NOTICE OF REMOVAL

32.     Plaintiffs' jurisdictional gerrymandering violates the purpose of CAFA's mass action provisions to provide for federal jurisdiction over "class actions in disguise." S. Rep. 109-14, at 37. As the Senate Committee Report explains, "[M]ass actions are simply class actions in disguise. They involve a lot of people who want their claims adjudicated together and they often result in the same abuses as class actions." S. Rep. 109-14, at 37.

33.     The procedural sham in this case is similar to the one faced by the Sixth Circuit in *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405 (6th Cir. 2008). In *Freeman*, the plaintiffs had divided their nuisance suit against a paper mill into five separate class actions, each limiting their damages to $4.9 million, below CAFA's threshold, and each one covering a distinctly different time period. *See id.* at 406. The court held removal was proper because the plaintiffs "put forth no colorable reason for breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction." *Id.* at 407. "CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction." *Id.* Consequently, the court held that where recovery is expanded by virtue of splintering of lawsuits for no colorable reason, the number of plaintiffs in the splintered lawsuits may be aggregated. *Freeman, 551* at 408.

34.     Just as in *Freeman*, there is no colorable reason here for the splintering of one mass action into several actions, as is evidenced by the First State Court Action, the Second State Court Action, the Third State Court Action, and the "Notice of Claims." The allegations of the First and Second State Court Actions mirror those of the Third State Court Action. *Compare* Complaint, Exhibit B, at ¶¶ 118-322, *with* Complaint, Exhibit C, at ¶¶ 116-321, and Complaint, Exhibit F, at ¶¶ 84-322. Plaintiffs in the three actions are residents of 22 different states. *Compare* Complaint, Exhibit B at ¶¶ 32-113 *with* Complaint, Exhibit C at ¶¶ 26-111, and Complaint, Exhibit F ¶¶ 28-83. The defendants in the First, Second and Third State Court Actions are nearly identical. *Compare* Complaint, Exhibit B, at ¶¶ 3-26, *with* Complaint,

1  Exhibit C, at ¶¶ 3-20, and Complaint, Exhibit F at ¶¶ 3-22.  The only truly distinctive

2  difference among the three actions is the identity of individual Plaintiffs, but all three

3  actions have a variety of such diverse residence that no logic in their grouping is

4  discernible.  Plainly, these actions could and should have been filed as one mass

5  action, but Plaintiffs splintered the action into separate suits to avoid federal

6  jurisdiction and subvert CAFA.

7      35.    Just as the Sixth Circuit permitted aggregation under CAFA in *Freeman*,

8  the district court in *Hamilton v. Burlington N. Santa Fe Ry. Co.*, 2008 WL 8148619

9  (W.D. Tex. Aug. 8, 2008) allowed six separate actions to be aggregated.  In *Hamilton*,

10  plaintiffs brought six separate actions in a Texas state court, each with fewer than 100

11  plaintiffs, and defendants removed under CAFA.  *Id.* at *2.  Noting precedent that

12  enabled the court to "pierce the pleadings" and examine the true nature of the action,

13  the court upheld removal, holding that "Plaintiff is ordinarily the master of the

14  complaint, but there are limits to a Plaintiff's ability to evade removal jurisdiction

15  through artful pleading." *Id.* at *5.  In a footnote, the court added, "[i]n other words, if

16  it looks like a duck, walks like a duck, and quacks like a duck, it surely is not six

17  separate and distinct lawsuits." *Id.* at n. 1.

18      36.    The same is true here.  The Third State Court Action, along with the

19  Second State Court Action, the First State Court Action and "Notice of Claims," looks

20  like, reads like, and is proceeding like *one* mass action.  Plaintiffs have attempted to

21  evade this Court's jurisdiction through artful pleading by filing separate lawsuits, but

22  these are not different lawsuits.  Plaintiffs are engaged in a scheme to prosecute one

23  mass action in disguise by filing separate but nearly identical lawsuits, each one with a

24  number of plaintiffs fewer than CAFA's threshold of 100.  This Court should ignore

25  the procedural sham, pierce the pleadings, and exercise its jurisdiction over this thinly

26  disguised mass action.

27

28

DEFENDANTS' NOTICE OF REMOVAL

### III.    A NECESSARY AND SUBSTANTIAL FEDERAL QUESTION IS EMBEDDED WITHIN PLAINTIFFS' STATE-LAW CLAIMS

37.    On its face, Plaintiff's Complaint asserts various causes of action under state law, including negligence, strict products liability (defective design), strict products liability (failure to warn), breach of express warranty, breach of implied warranty, and unlawful business acts and practices in violation of California Business and Professions Code § 17200. *See* Complaint, Exhibit F, at ¶¶ 148-167, 168-207, 208-247, 248-271, 272-299, 300-312. However, the Complaint also presents a necessary and substantial federal question that forms the basis of those claims, namely whether a substance known as 1,3 Dimethylamylamine ("DMAA") is a safe and lawful component of dietary supplements under federal law.

38.    Although Plaintiffs artfully pleaded their claims to couch them under state law, violations of federal law form the fundamental basis of Plaintiffs' Complaint. Careful analysis demonstrates that Plaintiffs are engaged in a fraudulent scheme to circumvent federal jurisdiction, not only by splitting a mass action into separate suits and thereby thwarting CAFA, but also by having a state court adjudicate a significant and disputed federal issue. Like the First and Second State Court Actions, the Third State Court Action asserts violations of federal law but was filed in state court.

39.    Plaintiffs' claims are explicitly premised upon alleged violations of the federal Food Drug & Cosmetic Act (FDCA) and the Dietary Supplement Health and Education Act (DSHEA). *See* Complaint, Exhibit F at ¶ 302 (citing specifically DSHEA, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45(a)(1) (August 2, 1984); Federal Food, Drug and Cosmetic Act §402(f)(1)(A) (21 U.S.C. §342)).

40.    Plaintiffs rely heavily on allegations made by the federal Food and Drug Administration (FDA) and actions taken by the FDA, which give rise to the claims set forth. *See* Complaint, Exhibit F at ¶¶ 95, 109, 114, 131, 132, 134, 142, 143, 144, 145, 250(g), 258(e), 302, 316, and 318.

16

41.    All of Plaintiffs' allegations regarding violations of federal law, statements by federal agency officials, actions taken by the FDA, and the federal agency's interpretation of federal regulations, specifically concern DMAA, an ingredient formerly contained in the Defendants' products, OxyElite Pro and Jack 3d. For example, Plaintiffs quote an FDA letter as saying Jack3d and OxyElite are "adulterated" under 21 U.S.C. §§ 342(f)(1)B) and 350(a) because they contain DMAA. *See* Complaint, Exhibit F at ¶143. Plaintiffs allege that the FDA warned consumers to stop using DMAA products. *Id.* at ¶144. Plaintiffs also claim FDA considers the products "illegal." *Id.* at ¶316.

42.    Whether DMAA is considered a dietary ingredient within the meaning of FDCA § 201(ff)(1) and DSHEA, an issue disputed by the FDA and the Defendants, undergirds every one of Plaintiffs' claims, and the resolution of their claims require construction and interpretation of complex federal regulatory schemes that should be decided by a federal court under federal question jurisdiction.

43.    Before Plaintiffs can use this "evidence" of purported statements, actions, and events, the validity and legality of the FDA's actions and its interpretation of complex federal regulatory schemes must be decided by a Court. Such as complex legal analysis and determination should not be left to a state court, as it requires uniform federal determination.

44.    This case satisfies the United States Supreme Court's four-part inquiry set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, namely whether the federal issue is: (1) necessary, (2) actually disputed and (3) substantial; and (4) whether accepting jurisdiction would be too disruptive on the balance between state and federal judicial responsibilities. *See Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314-15 (2005). In *Grable*, the Supreme Court concluded that federal question jurisdiction existed because the actions of the federal government gave rise to the state law claim.

DEFENDANTS' NOTICE OF REMOVAL

1    Accordingly, the interpretation of federal law was essential to resolving the state law

2    claim. *See id.* at 314-315. The same is clearly true here as well.

3         45.    Plaintiffs' Complaint necessarily implicates federal statutes FDCA and

4    DSHEA because they base allegations of the Defendants' wrongful conduct on

5    violations of FDCA, DSHEA, and FDA directives by sales of the subject products.

6    References to the FDA's interpretation and application of federal laws are pervasive

7    throughout Plaintiffs' Complaint and form the foundation of their causes of action.

8    Disputed issues of federal law must be addressed prior to any determination as to the

9    viability of Plaintiffs' state law claims. These issues impact not only the Defendants

10   but also companies that have sold and marketed dietary supplements. The FDA's

11   position on these issues pose federal legality questions, as well as create substantial,

12   industry-wide questions. Finally, whether the Defendants violated federal laws,

13   regulations, and directives requires extensive construction and application of the

14   federal scheme at issue and consideration of federal public policy. This consideration

15   is exclusively a federal judicial responsibility.

16   **IV.    CONCLUSION**

17        46.    Plaintiffs are attempting to avoid federal jurisdiction through

18   jurisdictional gerrymandering and artful pleading, but consideration of the Third,

19   Second and First State Actions, along with the "Notice(s) of Related Case" and

20   "Notice of Claims" clearly sheds light on that sham. The three actions, along with the

21   claims of at least 110 more Plaintiffs, are part of one, single mass action over which

22   this Court has jurisdiction under CAFA.

23        Additionally, resolving the issues in this case necessarily raises a federal

24   question, which provides an additional ground for this court to exercise jurisdiction.

25   This case does not involve the mere application of a federal standard to a single claim,

26   and its implications will be felt nationwide. The federal question in this case is

27   peculiar, fact-specific, pervasive, and inextricably linked to Plaintiffs' claims. It is

28   most properly decided by this Court.

DEFENDANTS' NOTICE OF REMOVAL

1    For all the reasons stated above, this action is within the original jurisdiction of

2    this Court pursuant to 28 U.S.C. § 1441.  Accordingly, this action is removed pursuant

3    to 28 U.S.C. §§ 1331, 1332, 1441, 1453, and 1446.

4

5    Dated: February 28, 2014                COZEN O'CONNOR

6

7                                             By: _____

8                                             Michael Partos
                                              Attorneys for UPSLABS, LLC, USPLABS
9                                             JACK3D, LLC, USPLABS OXYELITE,
                                              LLC, JONATHAN VINCENT DOYLE
10                                            AND JACOB GEISSLER

11

12   LEGAL\18300860\1 00577.0001.000/346010.000

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL

# EXHIBIT A

1   Michael Partos, State Bar No. 143845
    COZEN O'CONNOR
2   601 S. Figueroa Street
    Suite 3700
3   Los Angeles, CA 90017
    Telephone: 213.892.7900
4   Toll Free Phone: 800.563.1027
    Facsimile: 213.892.7999
5

6   Attorney for UPSLABS, LLC, USPLABS
    JACK3D, LLC, USPLABS OXYELITE, LLC,
    JONATHAN VINCENT DOYLE AND JACOB
7   GEISSLER

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               IN AND FOR THE COUNTY OF LOS ANGELES

10

11   DOMINIC LITTLE, DAVID BLAKE ALLEN,     Case No.: BC534065
    JEFF ASHWORTH, NAOMI BOOK AND
12   STANLEY BOOK AS CONSERVATORS OF     **NOTICE OF FILING REMOVAL TO**
    THE ESTATE OF JUSTIN BOOK, MARTIN     **FEDERAL COURT**
13   SANCHEZ, JOHN BAINTER, RICH WOLNIK,
    BRIAN NORRIS, JOSEPH CHILDS, JIMI
14   HERNANDEZ, and NOVALLIE HILL,

15            Plaintiffs,

16       vs.

17   USPLABS, LLC, JONATHAN VINCENT
    DOYLE (an individual), JOACOB GEISSLER
18   (an individual), USPLABS JACK3D, LLC,
    USPLABS OXYELITE, LLC, GNC
19   CORPORATION, THE VITAMIN SHOPPE,
    VITAMIN SHOPPE INDUSTRIES, INC.,
20   BALLY TOTAL FITNESS CORPORATION,
    NATURAL ALTERNATIVES
21   INTERNATIONAL, INC., S.K.
    LABORATORIES, INC., and DOES 1-500,
22   Inclusive.,

23           Defendants.

24

25

26

27

28

NOTICE OF FILING REMOVAL

1   **TO PLAINTIFFS, THEIR COUNSEL OF RECORD AND THE CLERK OF THE**

2   **SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:**

3         **PLEASE TAKE NOTICE** that on February 27, 2014, Defendants USPlabs, LLC, Jonathan

4   Vincent Doyle, Jacob Geissler, USPlabs Jack3d, LLC, and USPlabs OxyElite, LLC filed a Notice of

5   Removal of this action in the United State District Court for the Central District of California. A true

6   and correct copy of said Notice of Removal (without exhibits) is attached hereto as Exhibit A and is

7   served and filed herewith.

8         **PLEASE TAKE FURTHER NOTICE** that, pursuant to 28 U.S.C. § 1446, the filing of said

9   Notice affects the removal of this action to the federal court, and this Court is directed to "proceed

10   no further unless and until the case is remanded."

11        28 U.S.C. § 1446 (d).

12

13   Dated:   February 28, 2014         COZEN O'CONNOR

14

15                        By:

16                         Michael Partos
                          Attorneys for UPSLABS, LLC, USPLABS

17                         JACK3D, LLC, USPLABS OXYELITE, LLC,
                         JONATHAN VINCENT DOYLE AND JACOB

18                         GEISSLER

19   LEGAL\18311367\1 00577.0001.000/346010.000

20

21

22

23

24

25

26

27

28

NOTICE OF FILING REMOVAL