O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DOMINIC LITTLE, et al, | ) | Case No. CV 14-01540 DDP (SHx) |
| Plaintiffs, | ) ) | ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |
| v. | ) ) | [DKT. NO. 12] |
| USPLABS LLC, et al., | ) ) | |
| Defendants. | ) ) | |

Presently before the Court is Plaintiffs' motion to remand this action (the "Motion"). (Docket No. 12.) For the reasons stated in this Order, the Motion is GRANTED. The action is remanded, and Defendants' pending motion to dismiss (Docket No. 10) is DENIED AS MOOT.

**I. Background**

Plaintiffs are twelve individuals. Plaintiffs allege that each of them used one of two dietary supplements, Jack3d and OxyElite, for some period of time. (Complaint, Docket 1-1, ¶¶ 28-83.) Jack3d and OxyElite both contain a chemical know as DMAA. (Id. ¶ 90.) DMAA is a sympathomimetic drug, a class of drug used by physicians to increase blood pressure and constrict blood vessels, but also

widely used because of their perceived ability to enhance athletic performance. (Id. ¶¶ 91-92.) Plaintiffs allege that DMAA can cause dangerous cardiovascular events, such as heart attack, stroke, arrhythmia, heart palpitations, dizziness, cardiac arrest, and death, as well as other serious adverse effects, including liver failure, kidney failure, and seizures. (Id. ¶ 4.) Each Plaintiff alleges that one or more of these serious harms happened to him or her as a result of the use of Jack3d or OxyElite. (Id. ¶¶ 28-83.)

Plaintiffs allege that Defendants in this action each designed, formulated, marketed, distributed, and/or sold Jack3d and OxyElite products containing DMAA, despite its inherent dangers. (Id. ¶ 87.) Plaintiffs allege that various misrepresentations were made in the marketing of Jack3d and OxyElite regarding the products' safety and safety testing. (Id. ¶¶ 97-113.) Further, Plaintiffs allege that Jack3d and OxyElite are ineffective for their advertised uses. (Id. ¶ 88.) Plaintiffs bring the following state law claims arising out of these facts: (1) negligence; (2) strict products liability for design defects; (3) strict products liability for failure to warn; (4) breach of express warranty; (5) breach of implied warranty; and (6) unlawful business practices in violation of Cal. Bus. & Prof. Code § 17200 et seq. As factual support for their allegations, Plaintiffs describe various warnings and communications issued by the Food and Drug Administration ("FDA") regarding DMAA and Defendants' use of DMAA in their products. (See id. ¶¶ 144-46.)

This action was originally filed in the Los Angeles Superior Court on January 23, 2014. (See Notice of Removal, Docket No. 1, p. 5-6.) Defendants removed the action on February 28, 2014 on grounds

of CAFA jurisdiction and federal question jurisdiction. (Id.) Plaintiffs have now filed this Motion, seeking remand of the action to state court. (Docket No. 12.)

**II. Legal Standard**

A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court. 28 U.S.C. § 1441(a); see also Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977). As the removing party, a defendant bears the burden of proving federal jurisdiction. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996); see also Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003). The removal statute is strictly construed against removal jurisdiction, and federal jurisdiction must be rejected if any doubt exists as to the propriety of removal. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (explaining that courts resolve doubts as to removability in favor of remand).

**III. Discussion**

    A. CAFA Jurisdiction

Federal courts may exercise subject matter jurisdiction over a "mass action" if it satisfies the jurisdictional requirements of the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(11). One of the requirements for CAFA jurisdiction is that the action must involve "monetary relief claims of 100 or more persons" that are "proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." Id.

Defendants contend that they can meet the 100 plaintiff requirement under CAFA by aggregating the claims of plaintiffs in related cases filed by Plaintiffs' counsel and the claims of

3

potential plaintiffs listed on a "Notice of Claims" filed in this action. Further, Defendants argue that because Plaintiffs filed a notice of related cases in this action and because Plaintiffs filed a multidistrict litigation ("MDL") motion in one of the related cases (which did not purport to include the instant case), the Court should find that Plaintiffs have implicitly tried to join their claims.

The Ninth Circuit has held that "CAFA's 'mass action' provisions do not permit a defendant to remove to federal court separate state court actions, each involving the monetary claims of fewer than one hundred plaintiffs." Tanoh v. Dow Chem. Co., 561 F.3d 945, 953 (9th Cir. 2009). As a result, Defendants' argument that the plaintiffs in the related cases should be aggregated with Plaintiffs here is unavailing. In addition, Plaintiffs in this case have not sought to have this action consolidated with other actions, as this was not one of the cases before the MDL panel.[1] Therefore, the claims in this case may not be aggregated with the claims filed in the related actions in order to meet the CAFA numerosity requirement.

Further, Defendants cite no authority for the proposition that the CAFA numerosity requirement can be met by aggregating *potential* plaintiffs who have not even filed a claim. See Carolyne v. USPLabs, LLC, 2014 WL 1118017, at *3 (C.D. Cal. 2014) (finding no CAFA jurisdiction in one of the cases related to this action). There is no indication that any of these potential plaintiffs plans to file a claim, and the Court will not speculate as to whether and

---

[1] The MDL panel has denied the multidistrict litigation motion.

when these individuals may choose to file suit or whether, should they choose to do so, their claims will be sufficiently similar to the claims at issue in this action to warrant joining the cases for trial.[2] Therefore, the Court finds that Defendants have not met their burden of showing that subject matter jurisdiction exists under CAFA and that removal on this basis is thus improper.

B. <u>Federal Question Jurisdiction</u>

Federal question jurisdiction exists where a civil action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "For a case to 'arise under' federal law, a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law. Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated." <u>K2 Am. Corp. v. Roland Oil & Gas, LLC</u>, 653 F.3d 1024, 1029 (9th Cir. 2011). Where federal law does not create the cause of action, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308, 314 (2005).

---

[2] Plaintiffs argue that even if the Court might consider such potential claims in evaluating whether CAFA jurisdiction is appropriate, many of the potential plaintiffs listed in their Notice of Claims have injuries resulting from ingestion of a different chemical (aegeline), which would raise different issues than are present in the current action regarding DMAA.

    Plaintiffs bring purely state law claims in this action: negligence, strict products liability for design defects and failure to warn, breach of warranty, and UCL claims. Defendants argue that this Court has federal question jurisdiction over this action because "Plaintiffs' Complaint attempts to assert claims based on Defendants' alleged failure to comply with federal laws, regulations and directives regarding sales and distribution of their Jack3d and OxyElite dietary supplement products." (Opp. to Mtn., Docket No. 17, p. 2.) This statement mischaracterizes Plaintiffs' claims.

    Although Plaintiffs mention the Food and Drug Administration's warning letters to Defendants regarding the products at issue, no interpretation of federal law will be necessary to adjudicate the state law claims. The interactions with the FDA, at most, are evidence that Defendants knew or should have known of the detrimental effects of DMAA and evidence that DMAA is actually unsafe. Plaintiffs could succeed on all of the claims at issue in this case without any reference to the FDA or to any federal law, as a determination of whether the FDA has or has not approved, disapproved, or outlawed DMAA is not necessarily dispositive of whether Defendants in this case should have known about the dangers their products pose and whether they should have warned consumers of that danger.

    Further, to the extent that a federal issue is actually raised at all, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." <u>Merrell Dow Pharms., Inc., v. Thompson</u>, 478 U.S. 804, 813 (1986). Even if the presence of Plaintiffs' allegations

6

regarding the FDA will require some interpretation of how the federal regulatory scheme works in order to understand the import of the FDA warnings, and even if this interpretation could be construed as a "federal issue," that issue is minor, not "substantial." See Nevada v. Bank of America Corp., 672 F.3d 661, 675 (9th Cir. 2012) (finding no federal jurisdiction where "the federal issues ... [were] not 'pivotal' to [Plaintiff's] case"). As a result, the Court finds that Defendants have not met their burden of demonstrating that the Court has federal subject matter jurisdiction over this action.

**IV. Conclusion**

For the foregoing reasons, the Motion is GRANTED. The action is remanded to the Los Angeles Superior Court. Defendants' motion to dismiss (Docket No. 10) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: April 25, 2014

DEAN D. PREGERSON
United States District Judge

cc: order, docket, remand letter to Los Angeles Superior Court, No. BC 534065

7